DECISION.
{¶ 1} Defendant-appellant, Jennifer Lynn Weir, appeals the judgment of the Hamilton County Court of Common Pleas convicting her of two counts of aggravated vehicular homicide, a second-degree felony, and one count of endangering children, a first-degree misdemeanor. She was convicted of the offenses after a jury trial.
 A Fatal Collision {¶ 2} At trial, Nancy Balsey testified that she had been in her car on a sunny August evening when a sport utility vehicle (SUV) caught her attention. Balsey stated that the SUV was swerving, crossing the center double-yellow line numerous times, and causing oncoming traffic to pull over to the shoulder.
 {¶ 3} The erratic driving continued for a distance of more than a mile and prompted Balsey's daughter to call 911 for emergency assistance. Before she could complete the call, the SUV crossed the center line and struck a motorcycle that James Bishop and Linda Bishop were riding. The Bishops ultimately died from injuries sustained in the crash.
 {¶ 4} Corporal Jeffrey Sabers of the Hamilton County Sheriff's Office arrived on the scene. Sabers determined that Weir had been driving the SUV and that four children were passengers in the vehicle.
 {¶ 5} Sabers testified that there was a moderate to strong odor of an alcoholic beverage about Weir's person. Her eyes were bloodshot, and her speech was slurred. Sabers administered three field-sobriety tests: the walk-and-turn test, the one-leg stand, and the horizontal-gaze-nystagmus test. Sabers testified that Weir had failed all three tests, after which he had arrested her.
 {¶ 6} In response to Sabers's questioning, Weir stated that she was on her way home from a picnic at which she had consumed approximately four beers. Weir later refused to submit to a breathalyzer test.
 {¶ 7} In her defense, Weir presented the testimony of a number of people who had attended the picnic. The witnesses stated that Weir did not appear to have been intoxicated when she left the picnic grounds.
 {¶ 8} Weir took the stand and testified that she had consumed only a portion of the four beers at the picnic and that she had not consumed any alcohol for approximately two hours before leaving the picnic grounds.
 {¶ 9} According to Weir, her four-year-old daughter had been seated behind her in the SUV and had begun screaming and kicking the driver's seat. Weir stated that she had reached behind her to control her daughter but was unable to do so. She had looked in the rear-view mirror to see what was wrong with the child and had lost control of the SUV. She had seen the Bishops' motorcycle but had been unable to avoid the collision.
 {¶ 10} The state produced rebuttal testimony indicating that when the intake person at the District One sheriff's office had questioned Weir about her medical condition, she had repeatedly stated, "F — you."
 {¶ 11} At the close of all the evidence, the jury returned guilty verdicts. The trial court sentenced Weir to consecutive terms of five years' imprisonment for each aggravated vehicular homicide and six months in jail for endangering children.
 Weight and Sufficiency {¶ 12} In her first assignment of error, Weir now argues that the convictions were based on insufficient evidence and were against the manifest weight of the evidence.
 {¶ 13} In the review of the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[2]
 {¶ 14} The aggravated-vehicular-homicide statute, R.C.2903.06(A)(1)(a), provides that "[n]o person, while operating * * * a motor vehicle * * * shall cause the death of another * * * [a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code * * *."
 {¶ 15} R.C. 4511.19(A)(1)(a) provides that "[n]o person shall operate any vehicle * * * if, at the time of the operation * * * [t]he person is under the influence of alcohol * * *."
 {¶ 16} In this case, Weir concedes that she caused the deaths of the Bishops, but she contends that the state failed to prove that she was under the influence of alcohol at the time of the collision. We disagree.
 {¶ 17} Weir's wildly erratic driving, her demeanor and slurred speech, and her inability to successfully complete the field-sobriety tests all indicated that she was intoxicated at the time of the collision. That evidence, coupled with Weir's admission that she had consumed approximately four beers, amply demonstrated that her ability to operate a vehicle had been appreciably impaired by the consumption of alcohol.
 {¶ 18} Accordingly, we hold that the state adduced sufficient evidence to support the aggravate-vehicular-homicide convictions. For the same reasons, we hold that the evidence supported the conviction for endangering the children who were in Weir's SUV.
 {¶ 19} Although Weir cites testimony that she had not been intoxicated and that the crash had been the result of her having been distracted by her child's tantrum, we cannot say that the jury lost its way in finding her guilty of the offenses. We overrule the first assignment of error.
 Motion to Suppress {¶ 20} In the second assignment of error, Weir argues that the trial court erred in overruling her motion to suppress the field-sobriety tests and the statements that she made to police following her arrest.
 {¶ 21} When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to evaluate the credibility of witnesses and to weigh the evidence.[3]
Although we must accept the trial court's findings of fact if they are supported by some competent, credible evidence, we conduct a de novo review of whether the facts meet the applicable legal standard.[4]
 {¶ 22} In this case, Weir contends that she was too unnerved by the circumstances of the accident and by her knowledge that the Bishops had been gravely injured to successfully complete the field-sobriety tests. Similarly, she argues that her lack of composure prevented her from comprehending the officer's explanation of her rights under Miranda v. Arizona.[5]
 {¶ 23} We find no error in the trial court's decision. Weir testified that she had been extremely upset by the collision, but the evidence indicated that she had been sufficiently composed to have understood Sabers's instructions concerning the sobriety tests, and that she had not been so unnerved as to have been physically unable to perform the tests. The state established that Sabers had complied with the applicable regulations governing the administering of the tests, and the trial court did not err in refusing to suppress the results.
 {¶ 24} And contrary to Weir's assertions, there was ample evidence that she had appeared to understand the Miranda
warnings and that she had appeared sufficiently lucid to have knowingly waived her rights. It was within the trial court's discretion to accept that evidence, and we overrule the second assignment of error.
 Discovery Violation and the Motion for a Mistrial {¶ 25} In her third assignment of error, Weir argues that the trial court erred in denying her motion for a mistrial because of an alleged discovery violation. Specifically, Weir cites the state's failure to disclose her statements to the sheriff's office intake person until after the state's case-in-chief. She argues that her ability to defend the charges was prejudiced in light of the implication that because she had repeatedly said "F — you" to the intake person, she had been intoxicated and belligerent.
 {¶ 26} The state concedes that Weir was entitled to the statements under Crim.R. 16, but it argues that its failure to provide the statements did not warrant the extreme remedy of a mistrial.
 {¶ 27} A trial court has broad discretion in regulating discovery and in determining an appropriate sanction for discovery violations.[6] The decision to grant or deny a motion for a mistrial rests within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion.[7] A trial court should declare a mistrial "only when the ends of justice so require and a fair trial is no longer possible."[8]
 {¶ 28} In this case, we find no abuse of discretion in the trial court's denial of the motion for a mistrial. Although the better practice would have been to exclude the statements, we cannot say that Weir was deprived of a fair trial by their admission.
 {¶ 29} First, in its case-in-chief, the state had already adduced evidence that Weir had been belligerent after her arrest. According to a deputy who had transported her to the district office of the sheriff's department, Weir had become irate when she was placed in a temporary holding cell. According to the deputy, Weir had screamed and pounded on the door for ten to twenty minutes after having been placed in the cell. Thus, to the extent that the challenged statements tended to demonstrate that Weir had been drunk and belligerent, they were cumulative to other evidence.
 {¶ 30} Second, given the strength of the state's case, the challenged statements could not be said to have changed the outcome of the trial. As already described, the state presented compelling evidence that Weir had been intoxicated and that her intoxication had led to the Bishops' deaths. In the context of the entire proceedings, her belligerence toward the intake person was inconsequential.
 {¶ 31} The trial court did not abuse its discretion in denying the motion for a mistrial, and we overrule the third assignment of error.
 Sentencing {¶ 32} In the fourth and final assignment of error, Weir argues that the trial court erred in imposing more than the minimum terms of imprisonment for aggravated vehicular homicide and in ordering the prison terms to be served consecutively. The court imposed the sentences based on findings that it had made under R.C. 2929.14(B).
 {¶ 33} The Supreme Court of Ohio held, in State v.Foster,[9] that R.C. 2929.14(B) is unconstitutional in that it permits the trial court to impose more than the minimum sentence only after the court has made findings of fact not proved to a jury beyond a reasonable doubt or admitted by the defendant.[10]
 {¶ 34} But the Foster court held that the unconstitutional provisions could be severed and that, after severance, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."[11]
 {¶ 35} In this case, because the imposition of more than the minimum sentences for the felonies was based on an unconstitutional statute, we hereby vacate those sentences and remand the cause for resentencing in light of Foster. The fourth assignment of error is sustained.
 Conclusion {¶ 36} The first, second, and third assignments are overruled. The fourth assignment of error is sustained. The judgment of the trial court is affirmed in part, and the sentences for the felonies are vacated. The cause is remanded for resentencing.
Judgment accordingly.
Doan and Painter, JJ., concur.
[1] State v. Waddy (1992), 63 Ohio St.3d 424, 430,588 N.E.2d 819.
[2] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[3] State v. Sanders, 1st Dist. No. C-030846, 2004-Ohio-6842, at ¶ 6, citing State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.
[4] Id.
[5] (1966), 384 U.S. 436, 86 S.Ct. 1602.
[6] State v. Wiles (1991), 59 Ohio St.3d 71, 78,571 N.E.2d 97.
[7] State v. Brewster, 1st Dist. Nos. C-030024 and C-030025,2004-Ohio-2993, at ¶ 67, jurisdictional motion overruled,103 Ohio St.3d 1480, 2004-Ohio-5405, 816 N.E.2d 255, citing State v.Sage (1987), 31 Ohio St.3d 173, 182, 510 N.E.2d 343, and Statev. McNeel (May 22, 1998), 1st Dist. No. C-960980.
[8] Brewster, supra, at ¶ 67, citing State v. Broe, 1st Dist. No. C-020521, 2003-Ohio-3054, at ¶ 36, and McNeel,
supra.
[9] 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.
[10] Id., paragraph one of the syllabus.
[11] Id., paragraph seven of the syllabus.